Filed 11/14/23  P. v. Thompson CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MAURICE LAMAR THOMPSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B322544<br>(Super. Ct. No. GA056889)<br>(Los Angeles County) |

Maurice Lamar Thompson was convicted, by jury, of the 2004 attempted premeditated and deliberate murder of Adonis Towles (Pen. Code, §§ 187, subd. (a), 664)[1], kidnapping to commit robbery (§209, subd. (b)(1)), kidnapping (§ 207, subd. (a)), second degree robbery (§211), and shooting at an occupied motor vehicle.  (§246.)  On direct appeal, we reversed the kidnapping conviction (§207, subd. (a)), modified the sentence accordingly

---

[1] All statutory references are to the Penal Code unless otherwise stated.

and affirmed. (*People v. Thompson* (July 16, 2007, B192159) [nonpub. opn.].)

Appellant petitioned for resentencing under former section 1170.95, now section 1172.6. The trial court appointed counsel, reviewed the parties' briefs, and held an evidentiary hearing on the petition. The record of that hearing includes the transcripts of appellant's preliminary hearing and trial. The trial court denied the petition after finding appellant ineligible for resentencing as a direct aider and abettor of the attempted premeditated and deliberated murder. On appeal, appellant contends there is insufficient evidence he directly aided and abetted the attempted murder or that he acted with premeditation and deliberation. He further contends he is entitled to a new evidentiary hearing because the trial court was precluded from finding the "only reason" he and his confederates kidnapped the victim was to murder him. We affirm.

*Facts*

Adonis Towles made his living selling merchandise, for cash, out of his truck. He received a call from appellant, who he recognized as a past customer. Returning the call, Towles learned that appellant wanted to purchase "Cuba" brand cologne. Towles had the cologne and arranged to meet appellant at a street corner in Pasadena. Appellant was waiting for Towles at the corner, in front of an apartment building. He told Towles to drive his truck into the building's underground garage. Towles complied. When he got out of the truck, Towles was confronted by two more men. One had a gun. The man with the gun told Towles to empty his pockets. Towles did as he was told, giving the man $90. The two men then wrestled Towles into the trunk of a nearby yellow Mercedes and handcuffed his hands behind his

2

back.  Throughout the incident, appellant stood near the gunman.  He did nothing to indicate he was surprised by their actions, nor did he intervene.

The men drove Towles around for a long time.  When they finally stopped, one of the men put a gun to Towles' head and told him to get out of the trunk.  Towles noticed that his truck was nearby and had been emptied of all his merchandise.  The men ordered Towles to get into the back seat of the truck.  They then shot Towles several times, hitting him twice in the head.  One bullet lodged in Towles' brain; the other shot out his right eye and tore the bridge of his nose.

Towles managed to get out of the truck.  A passerby recognized him and called for help.  Just then, an off-duty Los Angeles police officer drove by and saw Towles standing near his truck, obviously in distress.  The officer stopped to help.  Towles told him that he was shot by "some guys in a yellow Mercedes."  Towles did not see appellant at the scene of the shooting.

Two days later, appellant was arrested while driving a yellow Mercedes.  He was the registered owner of the car.  Appellant had an outstanding warrant and was driving with a suspended license.  There was a bottle of "Cuba" brand cologne in the glove compartment and appellant's cell phone was on the floor, directly behind the driver's seat.  Cell phone records showed that, on the afternoon of the shooting, appellant made a short call to Towles' phone.  Towles called appellant's phone a few minutes later.

Towles identified a photograph of appellant's Mercedes as the car in which he was held.  When shown a photo lineup a few days after his surgery, Towles could not identify appellant.  A few weeks later, however, Towles was shown a

3

second photo lineup and identified appellant's photograph as the person who met him on the street and showed him where to park in the underground garage. He was never able to identify the other men involved in the robbery and shooting.

There was evidence at trial that appellant belonged to the PJG gang. About one year before the shooting, a Pasadena police officer confronted appellant and group of young men in an underground parking lot on the same street where Towles was abducted. At the time, appellant was carrying a loaded .38 caliber handgun.

*Petition for Resentencing*

At the evidentiary hearing on appellant's petition for resentencing, the parties agreed that the trial court could consider the transcript of appellant's preliminary hearing and the transcript of his trial. Appellant contended he could not be convicted of attempted murder under current law because there is insufficient evidence that he directly aided and abetted attempted murder or that he acted with premeditation and deliberation. The prosecution contended the record supported a finding of direct aiding and abetting with express malice. To establish direct aiding and abetting, the prosecution relied on evidence that appellant: set up the meeting with Towles; lured Towles into the underground parking garage; directed Towles where to park; stood side-by-side with the man who was holding Towles at gunpoint; watched his confederates rob Towles of his cash and cell phone; watched Towles be forced into the trunk of a Mercedes registered in appellant's name; and allowed the confederates to use his car to remove Towles from the parking garage. In addition, Towles knew appellant from prior

4

transactions and could identify him. The apartment complex was also tied to appellant's gang.

Adopting the prosecution's reasoning, the trial court concluded appellant was not eligible for resentencing because the prosecution established beyond a reasonable doubt that appellant could be found guilty of attempted murder with express malice under current law. The trial court noted its "bottom line" was, "there was no reason to have Mr. Towles stuffed in a trunk at gunpoint and handcuffed unless he was being taken out of the garage to be eliminated. If the plan was just to rob, that could have all been done in the underground garage. So there was no reason to remove him from there except to remove him from the scene and have the killing done at a place that would be less tied to [appellant] and [to his] companions." Towles was cooperating with the robbery. There was no reason to think he would resist, "[s]o the only reason to put Mr. Towles in the trunk and take him somewhere else is to dispose of the body in a place that's going to be less tied to [appellant] and the two other men." Appellant also had a motive to kill Towles because he knew Towles could identify him.

*Contentions*

Appellant contends the order denying his section 1172.6 petition must be reversed because there is insufficient evidence that he personally acted with premeditation and deliberation, or that he was a direct aider and abettor of the attempted murder. He further contends the trial court erred when it found that the "only reason" to kidnap Towles was to murder him because the jury at appellant's trial found the kidnapping was committed for the purpose of robbery, not murder. Respondent contends the trial court's factual findings

5

are supported by substantial evidence and that it was not required to prove appellant personally premeditated and deliberated the attempted murder.  Respondent further contends the trial court was entitled to review the evidence anew and that, in any event, its findings were consistent with the prior judgment.

*Standard of Review*

At an evidentiary hearing on a section 1172.6 petition, the trial court is tasked with determining whether the prosecution proved beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under current law.  (*Id.*, subd. (d)(3).)  We review the trial court's findings of fact for substantial evidence and its conclusions of law de novo.  (*People v. Cooper* (2022) 77 Cal.App.5th 393, 412; see also *People v. Schell* (2022) 84 Cal.App.5th 473, 442 (*Schell*).)

This familiar standard of review requires us to ""“examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence – that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt.”'  [Citation.]  Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt. [Citation.]”  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298

6

(*Clements*); see also *People v. Garrison* (2021) 73 Cal.App.5th 735, 747.)

*Discussion*

At an evidentiary hearing under section 1172.6, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (d)(3).)  As relevant here, Senate Bill No. 1437 (2018-2019 Reg. Sess.)  made sweeping changes to California's felony murder rule and to the natural and probable consequences doctrine, effective January 1, 2019.  First, section 188, defining express and implied malice, was amended to add a requirement that, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3).)  Second, section 189 was amended to provide, "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  (1) The person was the actual killer.  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ."  (§ 189, subd. (e).)  Robbery and kidnapping are among the felonies listed in subdivision (a) of section 189.

7

Appellant contends he is eligible for resentencing under section 1172.6 for two reasons.  First, he contends there is no substantial evidence that he personally acted with premeditation and deliberation when he aided and abetted the attempted murder.  Second, he contends the evidence is insufficient to establish that he directly aided and abetted the attempted murder.  Neither contention has merit.

1. Personal Willfulness, Premeditation and Deliberation.  Appellant's first contention has been expressly rejected by our Supreme Court.  *People v. Lee* (2003) 31 Cal.4th 613 (*Lee*) held that, "section 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted willfully and with deliberation and premeditation, even if he or she is guilty as an aider and abettor." (*Id.* at p. 616.)

*People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), applied *Lee* where the defendant was convicted of willful, premeditated and deliberate attempted murder under the natural and probable consequences doctrine, with robbery as the target offense.  First, our Supreme Court reiterated that section 664, subdivision (a) does not divide the crime of attempted murder into different degrees.  (*Favor,* at p. 876.) Rather, section 664, subdivision (a) is a penalty provision that prescribes an increase in punishment where the attempt involves the more culpable mental state of willfulness, premeditation and deliberation.  (*Favor,* at p. 877.)

Our Supreme Court further held that, where the defendant is convicted as an aider and abettor under the natural and probable consequences doctrine, "there is no requirement that an aider and abettor reasonably foresee an attempted

8

premeditated murder as the natural and probable consequence of the target offense. It is sufficient that attempted murder is a reasonably foreseeable consequence of the crime aided and abetted, and the attempted murder itself was committed willfully, deliberately and with premeditation." (*Favor, supra,* 54 Cal.4th at p. 880.)

*People v. Chiu* (2014) 59 Cal.4th 155, limited *Lee* and *Favor* where the defendant was convicted of first degree willful, deliberate and premeditated murder as a direct aider and abettor under the natural and probable consequences doctrine with assault as the target offense. Without overruling or disapproving *Lee*, our Supreme Court held in *Chiu* that, "an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine. Rather, his or her liability for that crime must be based on direct aiding and abetting principles." (*Id.* at pp. 158-159.)

Appellant urges us to conclude that *Lee* is no longer controlling based on *Chiu* and the 2019 amendments to section 188, subdivision (a)(3) which abrogate the natural and probable consequences doctrine. But our Supreme Court has not overruled *Lee*. Until it does so, we are bound by its holding. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823 (*Lee* remains binding despite intervening statutory amendments).) Consequently, we conclude respondent was not obligated to prove at the section 1172.6 evidentiary hearing appellant personally premeditated and deliberated the attempted murder.

Appellant contends *Lee* is no longer controlling because the 2019 amendments to section 189 also limit the application of section 664 to those who personally acted willfully

and with deliberation and premeditation.  Under current law, then, section 664 would not apply to appellant.  Section 664, however, does not define the substantive offense of attempted murder.  Instead, it "constitutes a penalty provision increasing the punishment for attempted murder . . . when the murder attempted was willful, deliberate, and premeditated." (*Lee, supra,* 31 Cal.4th at p. 616.)  Eligibility for resentencing under section 1172.6, by contrast, is based on the substantive offense, not applicable sentence enhancements or other penalty provisions.  Because section 664 is a penalty provision, and does not define a substantive offense, amendments limiting its application do not render a defendant eligible for resentencing under section 1172.6.

       2.  <u>Substantial Evidence of Direct Aiding and Abetting</u>.  Appellant next contends he is entitled to relief under section 1172.6 because there is insufficient evidence that he directly aided and abetted the attempted murder.  We disagree.  In evaluating this contention, we review the record in the light most favorable to the trial court's order, "to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements, supra,* 75 Cal.App.5th at p. 298.)  The record here is the record from appellant's 2006 trial and the reporter's transcript of his preliminary hearing.  It discloses substantial evidence supporting the trial court's finding that, beyond a reasonable doubt, current law would permit appellant to be convicted of directly aiding and abetting the attempted murder.

       Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. (*Lee, supra,* 31 Cal.4th at p.

623; *People v. Swain* (1996) 12 Cal.4th 593, 604-605.) A direct aider and abettor's guilt "is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1116-1117.)

As our Supreme Court explained in *Lee,* "To be guilty of a crime as an aider and abettor, a person must 'aid[ ] the [direct] perpetrator by acts or encourage[ ] him [or her] by words or gestures.' [Citations.] In addition, . . . the person must give such aid or encouragement 'with knowledge of the criminal purpose of the [direct] perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of,' the crime in question. [Citations.] When the crime at issue requires a specific intent, in order to be guilty as an aider and abettor the person 'must share the specific intent of the [direct] perpetrator,' that is to say, the person must 'know[ ] the full extent of the [direct] perpetrator's criminal purpose and [must] give[ ] aid or encouragement with the intent or purpose of facilitating the [direct] perpetrator's commission of the crime.' [Citation.] Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill. [Citation.]" (*Lee, supra,* 31 Cal.4th at pp. 623-624.)

Aiding and abetting requires some overt or affirmative form of assistance. (*People v. Partee* (2020) 8 Cal.5th 860, 868.) "Evidence that a person aided one crime cannot

11

substitute for evidence that the person aided a different crime." (*In re K.M.* (2022) 75 Cal.App.5th 323, 330.)

The totality of the circumstances here supports the trial court's finding that appellant directly and with the intent to kill, aided and abetted the attempted murder. Appellant played a key role in the plan. He had previously purchased cologne from Towles and used that connection to arrange another purchase from him. When Towles arrived at the meeting place, which appellant chose, appellant made no attempt to hide his identity from Towles. Instead, he directed Towles into the underground parking garage and then instructed him where to park. The apartment building was one associated with appellant's gang. A rational fact finder could infer from this evidence that appellant intentionally set the robbery in motion by luring Towles to the parking garage and that he intended for Towles ultimately to be killed, to prevent his identification.

Appellant's conduct after the robbery began also supports the finding that he participated in the crime with the intent to kill. Appellant showed no surprise when the other men appeared and surrounded Towles in the parking garage. He stood near the gunman while Towles was directed to empty his pockets and was then wrestled into the trunk of a Mercedes that was registered to appellant. While Towles was being driven around in the trunk of appellant's own car, the robbers emptied Towles' truck of its merchandise and then drove it to the scene of the shooting. Once there, Towles was removed from the Mercedes, ordered into the back seat of his truck and then shot. Appellant's Mercedes was then returned to him. He was arrested while driving that same car.

A rational fact finder could conclude that appellant permitted his associates to use his car to transport Towles away from a building associated with their gang and then to kill him to prevent him from identifying appellant. It is reasonable to infer that appellant felt safe driving the Mercedes because he believed the plan to kill Towles had been successful. With the only witness eliminated, neither appellant nor his car could be connected to the shooting.

The totality of the circumstances establishes that appellant was integral to every aspect of the plan to rob and kill Towles. He set the plan in motion, provided the car used to carry it out and had a strong motive to see the plan culminate in Towles' death because appellant was the person most likely to be identified by Towles. A rational trier of fact could conclude from this evidence that appellant assisted his compatriots in robbing and kidnapping Towles with knowledge of their shared plan to thereafter kill Towles, and that he provided this assistance with the intent to kill Towles. Substantial evidence thus supports the trial court's finding that appellant was a direct aider and abettor who acted with the intent to kill.

3. Issue Preclusion and Law of the Case. Appellant contends the trial court's findings of fact are inconsistent with the jury verdict so the matter must be remanded for a new evidentiary hearing. Specifically, appellant objects to the trial court's statement that, "Bottom line there was no reason to have Mr. Towles stuffed in a trunk at gunpoint and handcuffed unless he was being taken out of the garage to be eliminated. If the plan was just to rob, that could have all been done in the underground garage. So there was no reason to remove him from . . . the scene and have the killing done at a place that would be less tied to

13

[appellant] and his . . . companions." The trial court later explained it found "the only reason" to remove Towles from the parking garage "is to dispose of the body in a place that [is] going to be less tied to [appellant] and the two other men."

Appellant contends these statements are inconsistent with the jury's verdict convicting him of kidnapping for the purpose of robbery. To convict him of that offense, the jury had to find that he aided and abetted the kidnapping with the specific intent to rob Towles. Appellant contends the trial court contradicted that verdict when it found the kidnapping was committed for the purpose of killing Towles rather than robbing him. He contends the trial court was precluded from making that finding by the doctrines of issue preclusion and law of the case. We are not persuaded.

As an initial matter, appellant did not raise either issue preclusion or law of the case in the trial court. "These issues are waived. Objections must be timely and *specific*." (*People v. Neely* (1999) 70 Cal.App.4th 767, 781.)

Had the contentions been preserved for review, we would reject them. First, the trial court's finding that the "only reason" to kidnap Towles was to kill him is not inconsistent with the prior jury verdict. Appellant was convicted of kidnapping for the purposes of robbery in violation of section 209, subdivision (b)(1). This required the jury to find that the kidnappers formed the specific intent to rob Towles before he was kidnapped. (See, e.g., *People v. Jones* (1997) 58 Cal.App.4th 693, 717.) But harboring the specific intent to rob does not foreclose the possibility that the kidnappers also intended to kill Towles after they finished the robbery. "All that is required is that the defendant have the specific intent to commit a robbery at the

14

time the kidnapping begins." (*People v. Davis* (2005) 36 Cal.4th 510, 565-566.)

Second, even if its findings were inconsistent with the prior verdict, the trial court did not err because section 1172.6 permits it to independently review the evidence and make findings that were not required in the original trial. Subdivision (d)(3) of section 1172.6 permits the parties to introduce new evidence and the prosecution to rely on new theories of guilt not previously considered by a jury. (*Schell, supra,* 84 Cal.App.5th at p. 444.) Here, the trial court considered evidence that was not presented to the jury because it reviewed the transcript of appellant's preliminary hearing. "By allowing new evidence and providing for an evidentiary hearing, the Legislature plainly intended that the issues concerning whether the defendant was guilty under theories of murder not previously or necessarily decided would be resolved anew, through a factfinding process affording a degree of due process to the petitioner." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 813.)

*Disposition*

The order dated May 31, 2022 denying the petition for resentencing under Penal Code section 1172.6 (former section 1170.95) is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

We concur:


GILBERT, P. J.

CODY, J.

15

Kathleen Blanchard, Judge

Superior Court County of Los Angeles

_____


      James S. Donnelly, under appointment by the Court of Appeal, for Defendant and Appellant.

      Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, Nicholas J. Webster, Deputy Attorney General, for Plaintiff and Respondent.